**UNITED STATES, Appellee,**

v.

**Sergeant Audrey S. MITCHELL, 224–86–4562, United States Army, Appellant.**

**SPCM 18953.**

U.S. Army Court of Military Review.

31 Jan. 1985.

Colonel William G. Eckhardt, JAGC, Lieutenant Colonel R. Rex Brookshire II, JAGC, Major Robert M. Ott, JAGC, and Captain Frank J. DiGiammarino, JAGC, were on the pleadings for appellant.

Colonel James Kucera, JAGC, Captain Samuel J. Rob, JAGC, and Captain Laura G. Poston, JAGC, were on the pleadings for appellee.

Before McKAY, WATKINS, and LYMBURNER, Appellate Military Judges.

## OPINION OF THE COURT

McKAY, Senior Judge:

The appellant was tried on 12 November 1982 by a special court-martial composed of members and convened by the Commander, 3d Armored Division, Major General Thurman E. Anderson. Contrary to her pleas, the appellant was convicted of possession of heroin in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (1982) [hereinafter cited as UCMJ]. She was sentenced to a bad-conduct discharge and to be reduced to the lowest enlisted grade. General Anderson approved the sentence.

### I

The appellant contends, *inter alia*, that General Anderson was disqualified from taking action in this case because he discouraged favorable testimony by witnesses in extenuation and mitigation and because he believed that the failure of a court-martial to adjudge a punitive discharge was a failure for the command, and that General Anderson's injudicious conduct tainted the appellant's court-martial from the outset. Although we do not find that General Anderson's actions disqualified him from referring a case to trial,[1] we do find that certain remarks attributed to him create the appearance of unlawful command influence, and raise the issue of whether the appellant's trial was thereby affected.

### II

In *United States v. Treakle*, 18 M.J. 646 (A.C.M.R.1984) (en banc), this Court concluded that unlawful command influence was present in the 3d Armored Division during the time General Anderson was in

---

1. *See United States v. Treakle*, 18 M.J. 646, 654–55 (A.C.M.R.1984).

command. *See also United States v. Hill*, 18 M.J. 757 (A.C.M.R.1984); *United States v. Yslava*, 18 M.J. 670 (A.C.M.R.1984) (en banc). The unlawful influence consisted of statements made by General Anderson to officers and senior noncommissioned officers within the 3d Armored Division which were understood by many to discourage favorable character testimony. *See United States v. Thompson*, 19 M.J. 690 (A.C.M.R. 1984); *United States v. Treakle*, 18 M.J. at 657. In *Treakle*, we found that General Anderson's statements also could have been interpreted by court members as a command policy that evidence of an accused's good duty performance and soldierly qualities should be discounted and that retention in the Army of a convicted accused is inappropriate. *United States v. Treakle*, 18 M.J. at 658. Evaluation of the information before the Court at the time *Treakle* was decided led the Court to discount evidence that some members of the 3d Armored Division understood General Anderson's comments to mean they should give no testimony, character or otherwise, for an accused soldier. The Court determined that this interpretation of the general's comments was unreasonable and therefore outside the application of Article 37(a), UCMJ, 10 U.S.C. § 837(a). *United States v. Treakle*, 18 M.J. at 652–653.

Since the decision in *Treakle*, however, the Court has been presented with additional information which calls into question the validity of its prior assessment of which interpretations of the general's comments were reasonable. This information consists of the affidavit of Lieutenant Colonel Mueller, a former commander of a military police battalion with units located within the general court-martial jurisdiction of

General Anderson. Lieutenant Colonel Mueller avers that General Anderson's Staff Judge Advocate, Colonel Bozeman (then a lieutenant colonel), conveyed to him General Anderson's displeasure with testimony Lieutenant Colonel Mueller had given in a case tried on 10 September 1982 and referred by the general to trial. Colonel Bozeman allegedly stated, in effect, that "when a commander recommends court-martial the accused is guilty and should be punitively discharged."[2] Construed in a light most favorable to the accused,[3] and assuming but not deciding that Colonel Bozeman was speaking on behalf of General Anderson, Lieutenant Colonel Mueller's affidavit indicates not only that General Anderson disparaged the giving of favorable character testimony on behalf of a convicted soldier, but also the providing of any testimony inconsistent with a finding of guilt. Faced with this additional evidence of General Anderson's subjective beliefs, it is difficult to conclude, as did the Court in *Treakle*, 18 M.J. at 653, that the interpretation of his comments by members of General Anderson's command in accord with those beliefs was objectively unreasonable, and we decline to do so.

Our analysis of the Mueller affidavit and its effect on the earlier findings of fact made in *Treakle* has significant impact upon contested cases,[4] especially those tried before court members during General Anderson's tenure as the Commander, 3d Armored Division.

As in *Treakle*, we note that General Anderson's message had been widely disseminated throughout the 3d Armored Division by the time the appellant, Sergeant Mitchell, was tried, creating the appearance that members of her court-martial had heard or

---

**2.** See *United States v. Glidewell*, 19 M.J. 797 (A.C.M.R.1985) and *United States v. Thompson*, 19 M.J. 690 (A.C.M.R.1984), for additional discussion of the contents of the statement of Lieutenant Colonel Mueller and that of Colonel Bozeman, offered as an appellate exhibit by the government.

**3.** The submitted affidavit of Colonel Bozeman conflicts in several material respects with that of Lieutenant Colonel Mueller. We do not be-

lieve that this Court is the proper forum for resolving such conflicts. *See United States v. Karlson*, 16 M.J. 469 (C.M.A.1983); *United States v. Dubay*, 37 C.M.R. 411 (C.M.A.1967); *United States v. Thompson*, 19 M.J. at 694.

**4.** Sergeant Treakle pleaded guilty and was sentenced by a court-martial with members. The findings of guilty were affirmed, but this Court ordered a rehearing on the sentence.

otherwise been exposed to the general's comments. The Court now concludes that General Anderson's remarks were capable of influencing court members not only to disregard favorable character testimony presented on behalf of a convicted soldier, but also to discount any evidence inconsistent with the predetermination of an accused soldier's guilt made by the convening authority and those commanders who recommended referral of the charges for trial. As the Court is required to resolve any doubts in the matter in favor of the appellant, *United States v. Johnson*, 34 C.M.R. 328, 331 (C.M.A.1964), we cannot but conclude that, as in *Treakle*, there exists the appearance that the court members detailed to the appellant's case were subjected to unlawful command influence, and it must be presumed that the members were in fact influenced. *United States v. Treakle*, 18 M.J. at 658.[5] The government has not rebutted this presumption. We cannot, therefore, affirm either the findings of guilty or the sentence.

### III

Because of the Court's determination that the government has failed to meet its burden of showing that the court members were not unlawfully influenced to the prejudice of the appellant, it is deemed unnecessary to examine at this time whether the appellant's trial was otherwise affected by unlawful command influence. It is noted, however, that prior opinions of this Court have held that an accused tried within the 3d Armored Division during General An-

derson's tenure as commander shall receive the benefit of a rebuttable presumption that he was deprived of favorable character witnesses.[6] *See, e.g., United States v. Abelon*, 19 M.J. 767 (A.C.M.R.1984); *United States v. Thompson, supra; United States v. Schroeder*, 18 M.J. 792 (A.C.M.R. 1984); *United States v. Treakle, supra.* The Court also held that the affidavits of Lieutenant Colonel Mark Mueller and Colonel John Bozeman raise questions regarding General Anderson's ability to review and act on cases. *United States v. Thompson*, 19 M.J. at 694. Should the government successfully rebut the presumption that the court members who participated in the appellant's trial were unlawfully influenced to the appellant's prejudice, these remaining issues must be resolved before the findings and sentence may be affirmed.

### IV

The record of trial is returned to The Judge Advocate General for such action as is required to conduct a limited hearing ordered by a different convening authority. At the hearing the military judge will receive all available evidence bearing on the following issues:

1. Whether the court members had heard General Anderson's message before they participated in the appellant's trial and, if so, what they understood the General's policies to be.

2. Whether any court member was actually influenced, to the prejudice of the

---

**5.** In *Treakle*, the Court found that one of the court members who participated in Sergeant Treakle's trial had actually heard General Anderson comment on what he felt was appropriate testimony in extenuation and mitigation. The member denied being influenced, but recalled that General Anderson's policies were discussed by the members during Sergeant Treakle's trial. 18 M.J. at 658–659. Although not crucial to our decision in this case, we note that two other court members who participated in Treakle's trial also took part in the trial of the appellant. The government has made an offer of proof, which remains uncontradicted, that one of these members, Lieutenant Colonel Thrash, recalls that General Anderson's remarks

were routinely discussed among members of the 3d Armored Division and were "likely" discussed by court members during recesses or breaks. Lieutenant Colonel Thrash also denied being influenced by General Anderson's remarks.

**6.** Because our conclusions regarding the content of General Anderson's message and how the message could reasonably have been perceived depart from those reached in prior 3d Armored Division cases decided by this Court, the presumption that an accused was deprived of *character* witnesses only may now be too narrow.

appellant, by General Anderson's statements.

The military judge will hear the respective contentions of the parties, permit the presentation of witnesses and evidence, issue orders and rulings as are appropriate, and enter findings of fact and conclusions of law with respect to the two issues listed above. In addition to the preceding questions, the military judge will address any additional questions or issues that he determines are material or relevant to the overall issue of unlawful command influence.

If the military judge determines that the proceedings by which the appellant was originally tried were influenced by unlawful command influence, he will return the record to the convening authority who will set aside the findings and sentence and either dismiss the charges or order a rehearing.

If the military judge determines that unlawful command influence did not affect the appellant's trial but that General Anderson was not qualified to review and act on the appellant's case, he will return the record to the convening authority who will set aside the action by General Anderson and take a new initial action. If the military judge determines that General Anderson was qualified to review and act on the appellant's case, he will return the record to the convening authority who will review those findings and take appropriate action under the provisions of Article 64, UCMJ, 10 U.S.C. § 864.

In the event the convening authority to whom this case is referred deems a limited hearing on the issues of unlawful command influence and General Anderson's qualifications to review and act on the appellant's case impracticable, he will set aside the findings and sentence and either order a rehearing or dismiss the charges.

Judge LYMBURNER concurs.

Judge WATKINS did not participate in this decision.